Campbell, J.
The first question is what was the operation *11 of the original proceedings for the widening of John street on the land in question, belonging to the defendant. ' It was contended by the counsel for the defendant that the lien was not in the nature of a mortgage, because § 223 of the general act, passed April 9, 1813, did not apply; that such general act simply operated to reduce the several laws 'previously existing in relation to the city of New York into one act, and that no new powers or rights were given to the plaintiffs thereby, except in any case where there was some new provision; that § 223 was simply a re-enactment of part of the act of 1801, and therefore the expression, “ or shall hereafter be assessed by virtue of this act,” must be construed to mean by virtue of the act of 1801, and not of the general act of April 9,1813. Conceding, for the argument, that this construction should be given to § 223, we do not see that it makes any difference. The act of 16th April, 1787, § 1,- authorizes the plaintiffs to make ordinances, rules, and orders, and among other things, for “ regulating and altering the streets, wharfs, and slips, in such a manner as shall" be most commodious for shipping and transportation.” The first section of the act of 3d April, 1801, also permits that the plaintiffs may make by-laws and orders for “ regulating and altering the streets, &c.,” and § 6 of this act of 1801 is in the precise words of § 223 of the act of 1813, except there is added in § 223 the title of the act of 1801, whereby the assessments and charges under the act of 1787, and under the act of 1801, are made to operate as liens precisely as they were by the passage of the act of 1801. By the acts of 1787 and 1801, re-enacted in 1813, power was given to the plaintiffs to alter and regulate streets, and the money expended by them for that purpose was to be a lien and charge upon the houses and lots, in respect to which assessments were made, and might be sued for and recovered in like manner as if such houses and lots were mortgaged to the plaintiffs. By subsequent acts, and especially by the acts of April 5th and April 16th, 1816, various provisions are made as to the manner of proceeding, and as to the mode of assessing the damages, and as to the extent of land on either side of the street so to be assessed. But the original power to alter and regulate streets, and the right to have the expenses and charges of the plaintiffs *12 for such alteration or regulation a lien upon the houses and lots assessed, as if they were mortgaged, appears in no subsequent act to have been taken away. The manner in which the assessment should be enforced, the extent of property which it should reach, were altered, but the original security to the plaintiffs for their expenses and charges remained under the old acts by and through which the power was derived, and remained to them to make such alterations and regulations. I think, therefore, that in this case the plaintiffs acquired the lien contemplated by § 223 of the act of 1813. But if there was any doubt it seems to be clear that under the provisions of the act of February 21, 1824, amending the act ^ of 1813, such doubt must be removed. This act of 1824 was not cited to us on the argument. It however provides that in all cases where expenses are incurred by the corporation, under the provisions of the act of 1813, such expenses shall be a lien as if mortgaged, and the provisions of § 271 of act of 1813 are made applicable. (Act Feb. 1, 1824, p. 768.) Then has such lien been discharged by the sale, and if it has not, is the right of the plaintiff to enforce it barred by the statute of limitations?
The lien on the defendant’s house and lot for the assessment, “ shall bear lawful interest until paid, and shall be entitled to á preference before all other incumbrances upon the same, and may be sued for and recovered with costs in like manner as if the said houses and lots were mortgaged to the mayor, aider-men, and commonalty, for the payment thereof,” § 223 act of 1813, and § 6 act of 1801. The lien is specific, not general, and is the same as if the lot originally assessed was mortgaged to the plaintiff. If, then, there had been an actual mortgage executed by the defendant to the plaintiffs, the house and lot would have been discharged from that mortgage lien, either by payment or by a tender of payment of the amount. The defendant himself neither paid nor tendered the amount. The plaintiffs then proceed to sell, and the proceedings to enforce the collection of these assessments are somewhat analogous to a statute foreclosure of a mortgage. The purchase at auction was made by a stranger-, who paid the amount of the assessment and costs, and received a receipt therefor, stipulating that *13 at the expiration of two years he would be entitled to a lease of the premises. The lease was .never given, because the plaintiffs, after the sale at auction, did not take the further necessary legal steps to make such sale effectual, so that a good title could be given by them to the purchaser. And on demand made by the purchaser the plaintiffs returned to him his purchase money. There is no pretence on the part of the defendant that he has ever been in any way disturbed in his possession of the premises. He has manifested no desire to relieve his property from the lien by payment, or offer to pay the amount expended by the plaintiffs for his benefit. Suppose, in case of a sale of mortgaged premises by advertisement, they should be struck down to a stranger, who should pay the amount and take a receipt therefor, with a stipulation that the deed of the property should be given to him at a future day, and then for any reason occurring thereafter it should be agreed between the mortgagee and the purchaser that the sale should be abandoned, could it be said that thereby the mortgagee would lose his lien % It might be that if there should be a loss on a resale, the owner of the equity of redemption might recover damages, though that is doubtful. The case is widely differeut where there is payment, or tender of payment by the mortgagee, where the effect is to draw from the mortgagee and revest in the mortgagor all the right and interest held by the mortgagee. In the case of a sale by the mortgagee under his power of sale, to a stranger, the effect is to transfer all the title and interest of both mortgagor and mortgagee to such .stranger, and the lien is necessarily discharged by the operation. But in case of payment, or tender, the estate of the mortgagor becomes again complete and perfect, because he has done all that is required of him, and it is inequitable, after he has paid the debt, or is ready to pay, and has been tendered the amount, that the creditor should still retain a lien. But when the debtor stands by, and sees the creditor bargain with a stranger, and neither "pays nor offers to pay, and the effect of such a bargain, when completed, would be to carry away thé debtor’s title', it can hardly be said that if for any reason such bargain falls through, whereby the debtor is not divested of his estate, or even of its temporary possession, that he can then set up such bargain in *14 bar of the creditor’s lien. Viewing this lien as in the nature of a mortgage, I cannot think it was discharged by the sale mentioned in the case.
The proceedings for opening, altering, and widening streets, §§ 177,178, act of 1813, are taken in the Supreme Court, and become matter of record, and the lien created thereby being in the nature of a mortgage, I cannot see how the statute of limitation can be a bar; at all events, I think the presumption of payment cannot arise until the lapse of the twenty years, as in .case of a judgment.
I am of opinion that there should be judgment for the plaintiffs for the amount of the original assessment, with interest and costs.
Bosworth, J.
The terms of § 223, of the “ Act to reduce several Laws, relating particularly to the City of New York, into ONE ACT,” passed April 9, 1813, are sufficiently comprehensive to embrace the assessment in question:
Whether this section is applicable to this particular assessment, depends upon the question whether it relates' to sums assessed in the “ Opening and Laying out Streets, &c.” (id. § 177, p. 408), or relates solely to sums assessed in laying out . and regulating “ Wharves, Piers and Slips:" id. § 219, p. 431. The section is found under that part of the general act which contains provisions specially relating to the latter subject.
The section declares that every sum theretofore assessed by virtue of the act entitled, “ An Act for regulating the buildings, streets, wharves, and slips, in the City of New York,” passed April 16,1787, or by virtue of an act with the same title, passed April 3, 1801, and not refunded, or that should “ thereafter be assessed by virtue of this act, shall be a lien or charge upon the houses and lots in respect to which such assessments shall have been made, and shall bear lawful • interest until paid, and shall be entitled to a preference before all other incumbrances on the same, and may be sued for and recovered in Wee manner, as if the said houses and lots were mortgaged to the Mayor, Aldermen and Commonalty for the payment thereof: Provided always, that nothing herein contained shall extend to charge any such houses or lots, which *15 may have been bond fide sold and disposed of after the making of such assessment therein and before the 3d of April, 1798.”
By reference to the two acts recited in the preceding part of this section it will be seen that sums assessed by virtue of those acts “for regulating and altering,” “pitching and paving,” and “ the altering, amending, cleansing and scorning of any street ” within the city, are, by the express terms of § 6 of the act of April 3,1801, not only made liens and charges on the houses and lots assessed, having a preference before all other incumbrances upon the same, but it is declared that they may be sued for and recovered with costs, in like manner as if the said houses and lots were mortgaged, &c., for the payment thereof: (§§ 1 and 4 of act of April 16,1787, and § 6 of act of April 3, 1801.)
The act of 1787 made provision for ascertaining and assessing upon the owners and occupants of houses and lots to be benefited by the “ altering and amending of any street, the expenses of the improvement, and for the collection of the same by distress-wnrrant”—(§ 4 of id.)
The act of 1801 has the same title as that of 1787, viz. “ An Act for regulatmg the Buildings, Streets, Wharves and Slips in the City of New York.”—The 6th section of the act of 1801 is in the same terms as the 223d section of the act of 1813. The 1st section of the act of 1801 declares in the broadest and most unqualified terms that every sum that should- thereafter be assessed by virtue of that act, among the owners or occupants of any houses and lots, might be sued for and recovered in like manner as if said houses and lots were mortgaged for the payment thereof. It also made the same provision with respect to every sum previously assessed under the act of 1787. But it provided, as § 223 of the act of 1813 does, that any such houses or lots, bond fide sold and disposed óf before the 3d of April, 1798, should not be affected or charged by any assessments prior to the last named date. The cause of this proviso and the reason of fixing upon the date of April 3d, 1798, are found in the fact, that the fourth section of the act of April 3d, 1798, entitled “ An Act concerning certain streets, wharfs and piers, and the Alms-house, and Bridewell in the City of New York,” provided that the sums to be expended under the latter *16 act as therein provided, and also all and every sum and sums of money, which have been or shall at any time or times hereafter be assessed among the owners or occupants of any houses and lots by virtue of the said act entitled “An Act for regulating the buildings, streets, wharves ahd slips, in the City of New York” (being the act of April 3d, 1787), shall be a real incumbrance, &c.” (the residue of the section being in the precise language of § 223 of the act of 1813, excepting that the proviso of the act of 1798 declares that nothing contained in it, “shall extend to charge any such houses or lots, which may have been bond fide sold and disposed of, after the making of such assessment thereon, and before the passing of this act).
This act made all assessments, whether prior or subsequent, for the regulating and altering of streets, under and by virtue of the act of 1787, a first lien on the houses and lots assessed, and provided for their collection as if such houses and lots had been actually mortgaged for the payment thereof. The fourth section of it, which contains this provision, is the same in terms as § 6 of the act of 1801, and § 223 of the act of 1813. The exemption contained in the proviso of each operates upon sales band fide made before the date of April 3rd, 1798.
From the 3rd of April, 1798, down to April 9th, 1813, whatever other remedies may have been provided for collecting assessments made upon houses and lots to defray the expenses of regulating streets, it is clear that the remedy invoked in this case was expressly given by § 4 of the act of 1798, and by § 6 of the act of 1801.
The act of 1813, as its title declares, was an act to reduce into “ one act” several laws relating particularly to the City of New York. The 223rd section of it is a copy of § 6, of the act of 1801. Construing it according to the natural and obvious meaning of its terms, it would be applicable to the assessment in question. Holding it to be applicable is holding that the law on this .point continued the same after the act of 1813 was passed, as it was prior thereto.
But if it be construed to embrace only such future assessments as should be made to defray the expenses of laying out “ wharves, piers and slips,” then it will not embrace every assessment which shall hereafter be made by virtue of this act, *17 nor a large class of assessments to which it related by the express provisions of the act from which such section was copied. I perceive no good reason for giving to the words “by virtue of this act,” the restricted meaning they must receive if construed as if reading, “ by virtue of that part of this act relating to wharves, piers and slips only,” when that section, by the terms of the several laws so reduced to one act, related to and included assessments like the one in question.
I cannot resist the conclusion that this assessment by force of § 223 of the act of 1818, may be sued for and recovered in the same manner as if the premises on which it was imposed had been actually mortgaged to the plaintiffs for the payment thereof.
If that conclusion be correct, it would seem to follow as a matter of course that the plaintiffs are entitled to the same remedies by action, and to the same relief in it, as if a mortgage had been in fact executed: they would be entitled, unless some of the other grounds of defence are well taken, to such a judgment, as would be proper, if the assessment was secured by a mortgage of the lot assessed, and this was an action to foreclose such mortgage.
The act of February 21st, 1824 (47th session, vol. 6, c. p. 39), if still in force, may perhaps entitle the plaintiffs to the relief prayed for in this action, even if § 223 of the act of 1813, formed no part of the latter act.
The act of 1824 provides that §§ 270 and 271, of the ..act of 1813, “ shall apply to all and every the laws, ordinances, orders, and directions which the said corporation are authorized to make under and by virtue of cmy pari or section of the aforesaid act” (the act of 1813), “ or of any other act or acts of the legislature.”
Section 270 declares it to be lawful for the Corporation to cause all work, ordered by by-laws and ordinances relating to certain subjects,” to be executed at their own expense, on account of the persons on whom the same may be assessed, and § 271 declares any such expense which the Corporation may pay, to be a real encumbrance upon the houses and lots, in respect to which such assessments shall have been made, and to be recoverable in like manner as if the houses and lots *18 were mortgaged to the Corporation for the payment thereof.
If, in point of fact, the work ordered to be done in “ widening and straightening John street, between Broadway and Pearl street, in the second ward of the City of New York,” and in respect to which the assessment now sought to be collected was imposed on the defendant’s lot, was done, and the expense of it paid by the Corporation, then the act of 1821 makes the expense a lien on the lots assessed, and recoverable as if such lots were actually mortgaged for the payment thereof. I do not discover that this act has been repealed. But whether it has been or not, I think the plaintiffs are entitled to recover for the reasons previously stated, unless some of the other objections urged against a recovery are well taken.
It is objected that, as the land was sold for enough to satisfy the assessment, and as the sale itself was regular, the payment by the purchaser of the amount of his bid satisfied the encumbrance, and that it is the fault or neglect of the plaintiffs that the redemption notice was not published at the proper time; that the lien was for a time at least actually discharged, and cannot be revived.
There was no effectual sale; that a title under it was not perfected cannot, on the papers before us, be attributed to any bad faith of the plaintiffs’ agents, nor to any want of efforts designed to comply with the law. It resulted from their erroneous construction of the law in relation to the time when the redemption notice should be first published. .
The defendant, so far as the papers disclose, has not been prejudiced by the ineffectual efforts of the plaintiffs to collect the assessment by a sale of the lots assessed; he has not been disturbed in his possession, nor in any other full enjoyment of his property for a day or an hour. It seems to me unreasona- , ble to hold that the plaintiffs ever received, even for a moment, absolute satisfaction for their debt. They received a conditional payment, and only that. Even that was lost by misjudging the law. (Doughty v. Hope, 3d Denio, 598.)
Hie plaintiffs have not, in fact, had actual satisfaction, and the defendant has not paid any part of the assessment, nor been injured by the abortive attempt made to collect it. Un *19 less the debt is outlawed he is liable to pay it, and the lot assessed is yet encumbered by it.
It would be against the obvious policy of these acts to hold the debt outlawed. In the first place, the act of 1813 (§ 223) declares that sums theretofore assessed under the acts of 1787 and 1801, shall be first liens on the lots assessed, and that the sums assessed may be collected as if the lots were mortgaged for the payment thereof, and only such lots as were bona fide sold and disposed of before the 3d of April, 1798, are exempted from its operation. As against the original owner of the lot assessed, an assessment made in 1787, twenty-six years previously, would be a lien.
So section 4 of the act of April 3d, 1798, made assessments imposed under the act of 1787, liens of the same character, and collectable in the same manner, notwithstanding there was no similar provision in the act of 1787. The effect of this might have been to make assessments of more than ten years’ standing liens of like effect, and in respect to which the plaintiff would have the like rights and remedies, as in any case confessedly within § 223 of the act of 1813, subsequently arising. It is obvious then that it is no part of the policy of these acts to apply either six or ten years’ limitation to the liens created by such assessments.
It being against the obvious policy of the acts, no such rule of limitation should be applied, unless - required by positive law. The defendant’s property, according to the theory of these acts, has been exclusively benefited to the amount assessed on it. Neither he nor his property has paid it. It should not be paid by the great body of tax-payers, unless it is so provided by law.
This assessment is not technically a judgment, yet its validity, other things being regular, depends upon the question whether the report, ascertaining and fixing it, has been confirmed by the judgment of the Supreme Court, a court óf record. It is a case falling within the spirit and equity of the provision, respecting the presumptions of payment, applicable to judgments of a Court of Record.
The provision that the sums assessed “may be sued for .and recovered in like manner as if the said houses and lots were *20 mortgaged to, &c., for the payment thereof,” may relate solely to the forms of proceedings by suit, and of the judgment to be rendered thereon, and not have been designed to indicate or imply that the lien should continue as long as if there had been an actual mortgage to secure the debt.
But I find no express statutory provision in the way of holding in conformity with the obvious policy of the acts, and the justice of the case, that the presumption of payment shall not operate as a bar within a less period than that within which it can be applied to judgments of courts of record or mortgages of real estate.
On the whole case, I am of the opinion that the judgment appealed from should be reversed, and such a judgment rendered for the plaintiffs as would be proper in a suit to foreclose an actual mortgage of the lot in question, executed to secure the assessment now sought to be recovered.
Emmet, J., concurred.—Judgment for plaintiffs with interest and costs.